[No. 3666. Decided March 28, 1901.]

THE STATE OF WASHINGTON, *Respondent,* v. WALTER RASCH *et al., Appellants.*

INFANTS — VAGRANCY — COMMITMENT TO REFORM SCHOOL — SUFFICIENCY OF EVIDENCE .

The commitment of boys between the ages of eight and fifteen years to the reform school on the ground of vagrancy, under Bal. Code, § 2724, is unwarranted, when there was no testimony before the court showing they were guilty of vagrancy, or mendicancy, or incorrigibility, or had been convicted of crime, and the testimony introduced showed merely that the house in which they lived was very dirty, the mother being dead and the father away at work most of the day; that the boys were not clothed as well as some other boys in the community, but that they had plenty to eat; that on one occasion they had, with some other boys, broken into a house in the neighborhood, but there was nothing in the testimony showing how long before; and when the testimony in their behalf showed that they attended school regularly, were not of quarrelsome dispositions, and were regarded by some of the witnesses as good boys.

Appeal from Superior Court, Lincoln County.—Hon. CHARLES H. NEAL, Judge. Reversed.

*E. A. Hesseltine, Wright & Wright* and *Martin & Grant,* for appellants.

*N. T. Caton,* Prosecuting Attorney, *R. K. McComb,* of counsel), for the State.

The opinion of the court was delivered by

DUNBAR, J.—This is an appeal from the superior court of Lincoln county from a judgment committing the appellants to the reform school. A complaint was made to a justice of the peace in Lincoln county, under § 2722, Bal. Code, which provides that when a boy or girl of sound mind, between the ages of eight and sixteen years, shall be convicted before a justice of the peace or other inferior court of any crime, medicancy, vagrancy or incorrigibility, it shall be the duty of said magistrate before whom he or she may be convicted to forthwith send such boy or girl, together with all the papers filed in his office upon the subject, under the control of some officer, to a judge of a court of record. This was done in the present case, and the judge of the superior court, under the provisions of § 2724, entered into an examination of the cause, and committed the appellants to the reform school.

There are some questions of practice raised by the appellants, but it is not necessary for us to pass upon them, as an examination of the statement of facts convinces us that there was not sufficient testimony to warrant the court in making the commitment which it did. There is no doubt that the law has relegated a great deal to the discretion of the trial court in actions of this kind, and we would not be inclined to weigh the testimony, or enter into too nice a discrimination for the purpose of overruling the judgment of the trial court; but the defendants have a right of appeal to this court and the law does not intend that the appeal shall be an idle effort. Conceding the truthfulness of all the testimony offered by the state, we do not think it was legally sufficient to warrant the conviction. These boys

were from eight to fifteen years old. There was no testimony adduced before the court showing that they were guilty of vagrancy, or mendicancy, or incorrigibility, or that they had been convicted of any crime. The extent of the testimony was that the house in which the boys lived was very dirty; that the boys were not clothed as well as some other boys in the community; that on one occasion they had, with some other boys, broken into a house in the neighborhood. This last fact, however, appeared only incidentally, and it does not appear from the testimony how long ago it was; it may have been years ago, so far as we are able to gather from the record. But the principal testimony was directed to the untidy condition of the house. Even the witnesses for the state testified that the boys were good-natured, that they attended to their own business, that they did not quarrel among themselves or with other boys; and the testimony of a great many witnesses was to the effect that they were good boys, that they had plenty to eat and plenty to wear; that they attended school regularly, and that no complaints had been heard of them before that time. It does not appear that any citizen of the community had been annoyed by them in any way, or had made any complaints concerning them. So far as their appearance is concerned, it is worthy of mention that the sheriff had taken into custody a neighbor's boy, mistaking him for one of the defendants. A deliveryman testified that he delivered goods at the house of the father of these boys nearly every day, that they bought and used a great deal of provisions, and that they seemed to have as much to eat as other people in the community. A neighbor living within a few feet of the house testified to the same effect; that he had frequently observed their table, and had eaten there and that they had good provisions; that the boys were quiet, good-natured and obedient to their parent.

The father, who earnestly resisted this commitment, testified that his wife had died seven years before; that he had done all he could to properly raise his children; that he had worked steadily at good wages ever since his wife died; that for three years prior to this action he had worked, without missing a day, for $50 a month; that $40 of his wages invariably went to the support and maintenance of the children; that he had to leave them to themselves to a certain extent; and that more or less disorder and confusion resulted, but that he kept them as well clothed, and probably better fed, than the ordinary run of poor people in the community. This, in fact, was the burden of the testimony in the case, outside of that of the officers of the law who testified as to the untidy and uncleanly condition of the house.

The law will not undertake to stand *in loco parentis* to all the children in the state who do not have the best, or even ordinary, advantages. Parental and filial affection are too deeply rooted to be disturbed on slight provocation, and home life is too sacred to be violated, even by the law, without most pressing cause. The tendrils of affection are implanted equally in the breast of pauper and prince. They put forth as luxuriantly, blossom with as sweet a fragrance, and bear as beautiful fruit in the hovel as in the palace. The law, in its policy, will not rush to the support of every standard of morality or thrift that the citizen sees fit to erect. Great latitude must necessarily be given in these respects. It is no slight thing to deprive a parent of the care, custody, and society of a child, or a child of the protection, guidance, and affection of the parent. If these children can legally be taken from the custody of their parent under the conditions shown by the record in this case, few parents in poor circumstances, especially if their children are unfortunate enough to lose

either father or mother, would have any assurance that the care and custody of their children would be left to them. A great deal is said by the state's attorney in his brief in relation to crimes that had been committed by these children. But these assertions are absolutely outside of the record, and cannot be regarded, of course, by this court, which passes alone upon questions that are matters of record.

The judgment must be reversed, and the cause remanded, with instructions to discharge the appellants from custody.

REAVIS, C. J., and FULLERTON, ANDERS and WHITE, JJ., concur.