[No. 2955–3. Division Three. August 21, 1979.]

*In the Matter of the Welfare of*
TAMARA HANSEN.

28

*Dan Stormer* and *Rocco Treppiedi* of *Spokane Legal Services,* for appellant.

*Greg M. Devlin, Prosecuting Attorney, William J. Powell, Powell & Harnetiaux,* and *Andrew L. Braff,* for respondent.

McINTURFF, J.—What is in the best interests of a 12-year-old child? The legal guardians for more than 8 years, the natural mother, who until recently was a stranger, the child, the State and the trial court cannot agree.

On November 16, 1967, the respondent, Susan Hansen—now Thomas (Mrs. Thomas), gave birth to a daughter, Tamara.[1] Due to a drug dependency, marital problems, and frequent encounters with the law, Mrs. Thomas surrendered her infant child to the care of friends, the appellants, Mr. and Mrs. Cordero, in October 1968. In October 1970, the Corderos became Tammy's legal guardians by order of a California court. This was done with the consent of Mrs. Thomas, who was in jail at the time. Mrs. Thomas had little, if any, further contact with her daughter for the next 8 years.

In May 1973, the Corderos moved to Chewelah, Washington. Their impending move was known to Mrs. Thomas' mother, Mrs. Samson, who attempted to serve as a liaison between her daughter and granddaughter. Mrs. Thomas learned of her daughter's location sometime in 1975. A yearly phone call by the grandmother to the Corderos was the extent of contact between Mrs. Thomas and her daughter following the move to Washington. Tammy received no letters, gifts or financial support from her mother, and until recently, the two were strangers.

---

[1] In connection with the Hansens' 1971 divorce, neither parent petitioned for Tammy's custody. Mrs. Thomas is currently separated from her present husband, who did not participate in this action. Mr. and Mrs. Thomas also intend to divorce.

In July 1977, Mrs. Thomas petitioned a California court for termination of the guardianship established in 1970. The guardians, Mr. and Mrs. Cordero, received written notice of the proceedings but were unable to attend for financial reasons. On January 3, 1978, the California court terminated the guardianship and granted custody of Tammy to Mrs. Thomas. The following day, the Corderos instituted the present action in Washington by filing a petition to declare Tammy a dependent child under RCW 13.04.060.

In response to the Corderos' petition, on June 8, 1978, a hearing was held on the issue of dependency. Present at the hearing were Mrs. Thomas, her mother—Mrs. Samson, Mr. and Mrs. Cordero, the Stevens County prosecutor, and a guardian ad litem appointed on behalf of Tammy. Following examination of the first witness, Mrs. Thomas, the court expressed its inclination to find Tammy a dependent child and urged the parties to shorten the presentation of evidence. Mrs. Samson was called as the next and final witness. The Corderos indicated their desire to present additional evidence, but no additional evidence was taken. Following closing arguments, the court declared Tammy a dependent child due to her psychological integration into the Cordero household and the 7–year separation from her mother. As a temporary ward of the court, Tammy was allowed to remain in the physical custody of the Corderos, subject to the visitation rights of Mrs. Thomas. It was the expressed intent of the court to effect an eventual reunification of the natural mother with her daughter. Notices of appeal and cross appeal were immediately filed by the respective parties.

Pursuant to the juvenile court's order, Tammy visited her mother for 1 month during the summer of 1978. Following a hearing on November 28, 1978, Tammy was ordered returned to the custody of her natural mother. In response to an emergency motion filed in this court, the order was stayed since the Superior Court was without

authority to modify its earlier ruling which was currently on appeal.

Initially, we dispose of two preliminary issues—the jurisdiction of the court and the Corderos' standing to appeal.

Mrs. Thomas argues because the California order restoring Tammy to her custody is entitled to full faith and credit under U.S. Const. art. 4, § 1,[2] our juvenile court lacked jurisdiction, thus erred in refusing to dismiss the dependency petition.

██ Tammy's welfare is the primary concern of the court. The order terminating guardianship in California was entered upon default and under circumstances in which the welfare of the child and the fitness of the respective parties were never fully considered. Based upon the application of the principles expressed in *In re Rankin,* 76 Wn.2d 533, 536–37, 458 P.2d 176 (1969), we hold the full faith and credit clause did not preclude the Washington court from assuming jurisdiction over the question of the present dependency status of a child residing in this state.

> Where a custody decree is entered upon default, the court has had no opportunity to observe the two contending parents upon the witness stand or to examine the evidence concerning their fitness and concerning the welfare of the child. It must accept the allegations of the petitioner or, at best, the uncross–examined testimony of the petitioner.
>     . . . [T]he primary concern of the courts is always the welfare of the child. It would be unrealistic to assume that this concern can be served as well by a court which does not hear evidence and does not have an opportunity to observe both parents as it can by one in which the right of one parent to custody is contested by the other. Where the court in the prior hearing heard the evidence and observed the parties, it can be assumed that all of the circumstances *existing* at that time were made known to the court and a sound discretion was exercised. But

---

[2]U.S. Const. art. 4, § 1:
"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state."

where the prior decree was by default, no such assumption can be indulged.

*In re Rankin, supra* at 536–37; *see also White v. White,* 24 Wn.2d 52, 56–57, 163 P.2d 137 (1945). *In re Marriage of Verbin,* 92 Wn.2d 171, 182–83, 595 P.2d 905 (1979) states:[3]

> [T]his state had adopted the rule that a permanent child custody award by a sister state having jurisdiction of the parties and the subject matter is entitled to full faith and credit. *In re Marriage of Saucido, supra* at 657 [85 Wn.2d 653, 538 P.2d 1219 (1975)]. Under some circumstances, though, a court may decline to enforce such a decree or may modify it in order to protect the best interests of the child. . . .
>
> . . .
>
> . . . A Washington court may modify the custody decree of a sister state where significant facts not known to the decreeing court are shown.

Following a hearing on January 3, 1978, in which Mrs. Thomas alone appeared, the California court terminated the guardianship proceeding established in 1970. Significantly, the order is void of any mention of the welfare of the child. The Corderos, living in Washington, received notice of the proceedings by mail; however, due to lack of finances, they were unable to retain an attorney or travel to California to attend the hearing. The Stevens County juvenile court director sent a letter to the clerk of the California court informing the court of the Corderos' situation but was

---

[3]The court in *Verbin* further stated at page 184: "The full faith and credit clause should function to encourage national unity. *See May v. Anderson,* 345 U.S. 528, 536, 97 L. Ed. 1221, 73 S. Ct. 840 (1953) (Frankfurter, J., concurring). Yet enforcement of the decree in this case would only further the divisive and deplorable practice of forum shopping, by encouraging parents to bring suit in a state where the other parent is *financially or physically unable to vigorously litigate.* Since respondent was unable to appear early in the Maryland proceedings and marshal the evidence in her favor before that court, the trial proceeded quickly and appellant got a favorable decree first. If we were to enforce that decree despite the fact that Washington had jurisdiction first and more fully considered Aimee's welfare, we would only encourage this practice. We conclude the trial court was fully justified in refusing to enforce the Maryland decree." (Italics ours.)

unsuccessful in urging interstate cooperation in the resolution of this matter.[4]

Under these circumstances, it is clear the best interests of the child were never fully considered. In light of the long–term separation between mother and daughter and Tammy's unquestioned psychological integration into the Cordero family, the Washington court correctly assumed jurisdiction over the Corderos' dependency petition. The goal of a dependency hearing is to determine the welfare of the child and his best interests. *In re Becker*, 87 Wn.2d 470, 553 P.2d 1339 (1976). The dependency action initiated in Washington by the Corderos presents the first opportunity for any court to pass upon the question of the present welfare of the child. *Cf. White v. White, supra.* The 7–year separation of mother and daughter, "without an iota of contact," demonstrates a necessity of a dependency hearing. To give full faith and credit to the California order in this instance would seriously impair the ability of the Washington court to discharge its responsibility to a minor child residing in this state. *In re Becker, supra* at 570.[5]

---

[4]The letter, dated December 28, 1977, stated in part:

"The question that comes to this writer's mind is how can a guardianship be terminated without any evaluation, preplanning through parental visits and monitoring of visits through supervision of a social services agency . . .

". . . It appears that this matter can best be resolved by the Los Angeles Court working through the interstate compact on juveniles. If the plan is to remove this child immediately from the psychological parents, conceivably the only parents she has ever known, *the child's emotional welfare is not being considered at all.* . . ."

[5]The juvenile court here correctly assumed jurisdiction under the authority of RCW 13.04.030(2) and RCW 13.04.060 where the petition alleged dependency and the child was and is physically within the county. *Moore v. Burdman*, 84 Wn.2d 408, 414, 526 P.2d 893 (1974); *In re Gibson*, 4 Wn. App. 372, 374, 483 P.2d 131 (1971).

*Fry v. Ball*, 190 Colo. 128, 544 P.2d 402 (1975), cited by Mrs. Thomas, is not persuasive. At first glance, the facts appear similar except for one important distinction—the out–of–state guardian appeared by counsel at the hearing in California to terminate the guardianship. Here, the California order was entered on default. Secondly, as Mrs. Thomas acknowledges, the *Fry* case was not decided under the authority of the full faith and credit clause, but instead under the Uniform Child Custody Jurisdiction Act. In addition, it is interesting to note that

■ Next, Mrs. Thomas assigns error to the Washington court's refusal to decline jurisdiction under the doctrine of forum non conveniens. This doctrine contemplates discretionary declination of jurisdiction where, in the court's view, the difficulties of litigation militate for the dismissal of the action subject to a stipulation that the defendant submit to jurisdiction in a more convenient forum. *Werner v. Werner*, 84 Wn.2d 360, 370, 526 P.2d 370 (1974). Here, the facts and circumstances militate *against* dismissal of the action in this state. First, the child, who is the subject of this proceeding, and the Corderos have lived in Washington for the past 5 years. Second, this state is the most likely source for reliable, first–hand information concerning Tammy's present and future welfare. Friends, neighbors, teachers, employers, and social workers are available to testify, hopefully resulting in a fully informed and well–balanced decision regarding the child's interests. Third, while the original guardianship proceedings were initiated in California, this action was brought under the Washington dependency statute, RCW 13.04. Although there may be some financial hardship to Mrs. Thomas, nevertheless, we find no abuse of discretion in the court's refusal to decline jurisdiction under the doctrine of forum non conveniens.

■ Next, Mrs. Thomas argues the Corderos were barred by the doctrine of res judicata from seeking a Washington

---

were we to apply the same standards employed by the Colorado court to determine whether, under California law, the California court had jurisdiction to modify its earlier ruling terminating guardianship, the California court in the instant case did not have jurisdiction. California Civil Code § 5152(1)(b) (Supp. 1975), applied in *Fry* provides at page 406:

> "It is in the best interests of the child that a court of this state assume jurisdiction because (i) *the child* and *his parents,* or the child and *at least one contestant,* have a *significant* connection with this state, and (ii) there is available in this state *substantial evidence* concerning the child's present or future care, protection, training, and personal relationships."

(Italics ours.) The facts of this case do not satisfy the jurisdictional prerequisites of the California Civil Code, *i.e.,* Tammy was not in California at the time of the hearing.

court determination on the issue of dependency. We disagree. The essential elements of res judicata are identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) in the quality of the persons for or against whom the claim is made. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 396, 429 P.2d 207 (1967).

Here, there is no identity of cause of action. The California order terminating the Corderos' guardianship over Tammy severed a legal relationship. The welfare of the child was not considered. By contrast, the dependency petition initiated in Washington presented the first opportunity in many years for a full and fair consideration of the best interests of the child by any court.

■ Next, we turn to the question of the Corderos' standing to appeal. RCW 13.04.033 provides: "*Any person* aggrieved by a final order of the juvenile court may appeal said order as provided by this section." (Italics ours.) Consistent therewith, RAP 3.1 states: "Only an *aggrieved party* may seek review by the appellate court." (Italics ours.) Mrs. Thomas argues the Corderos are not aggrieved parties within the meaning of RAP 3.1. We disagree.

An aggrieved party is one who was a party to the trial court proceedings, and one whose property, pecuniary and personal rights were directly and substantially affected by the lower court's judgment. *Temple v. Feeney,* 7 Wn. App. 345, 347, 499 P.2d 1272 (1972). As Tammy's guardians for a period in excess of 8 years, the Corderos' personal rights are directly affected by the juvenile court's order and judgment, especially in light of the judge's expressed intent to effect an eventual reunification between Tammy and her natural mother. Faced with the possibility of forfeiture of a valuable human relationship, we find the Corderos have standing to appeal. *See also State v. Casey,* 7 Wn. App. 923, 926–27, 503 P.2d 1123 (1972).

■ The Corderos do not find fault with the finding of dependency, per se, rather this appeal concerns certain alleged errors which occurred during the course of the proceeding. The Corderos' first assignment of error concerns

the court's refusal to hear additional evidence they proposed to introduce in support of their allegation of dependency. This refusal, the Corderos contend, denied them due process of law. We agree.

The Corderos have been the only parents Tammy has ever known. Their interest in the welfare of the child is obvious and understandable. In support of their petition alleging dependency, the Corderos attempted to introduce evidence tending to show abandonment, willful and/or negligent failure to support and most importantly, the welfare of the child. The court refused the proffered evidence, having already found a sufficient basis for declaring Tammy a dependent child, *i.e.*, her psychological integration into the Cordero family. Only Mrs. Thomas and her mother were permitted to testify, even though the Corderos have acted as Tammy's parents since early childhood. There is nothing in the record to reflect the Corderos' background or other qualifications. To base an opinion entirely upon the testimony of the mother and grandmother results in a determination which lacks objectivity.

The Corderos are not Tammy's natural parents; nevertheless, they have stood in the relation of in loco parentis to the child for many years. The rights and liabilities arising out of the in loco parentis relationship are substantially similar to the relationship between parent and child. *State ex rel. Gilroy v. Superior Court,* 37 Wn.2d 926, 933, 226 P.2d 882 (1951). Therefore, due process principles require that on remand the Corderos be given a full and meaningful opportunity to present evidence in support of their dependency petition. *In re Luscier,* 84 Wn.2d 135, 137, 524 P.2d 906 (1974); *In re Hagen,* 21 Wn. App. 169, 173, 584 P.2d 446 (1978).

The essence of due process is the right to be heard. *In re Myricks,* 85 Wn.2d 252, 254, 533 P.2d 841 (1975). While we sympathize with the court's concern over the length of the hearing, the welfare of the child always remains paramount. It is in the best interests of the child that the Corderos be heard on all issues relevant to dependency. *In re Maurer,*

12 Wn. App. 637, 640, 530 P.2d 1338 (1975). Legislative recognition of this principle is also reflected in RCW 13.34-.090, which sets forth the inherent rights of *any* party to a dependency hearing. RCW 13.34.090 states:

> *Any party* has a right to be represented by an attorney of his or her own choosing in all proceedings under this chapter, *to introduce evidence, to be heard in his or her own behalf, to examine witnesses,* to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact–finder.

(Italics ours.) The court's decision to limit the Corderos' presentation of evidence was error.

■ The Corderos also contend the trial court failed to properly consider the best interests of the child. This contention stems from the court's expressed intent to effect a permanent reunification between Tammy and her mother, Mrs. Thomas. In this decision, the court was influenced by the legislative declaration contained in RCW 13.34.020. This statute provides:

> The legislature declares that the *family unit* is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that *the family unit should remain intact* in the absence of compelling evidence to the contrary.

(Italics ours.)

We do not interpret this statute to require the reunification of the natural mother with her child if compelling circumstances dictate otherwise. The statute speaks in terms of preservation of the "family unit." Here, Tammy continues to be more a member of the Cordero "family unit" than her mother's. Tammy has previously expressed her desire to remain with the Corderos. The examining psychiatrist, Walter Puddy, M.D., opined Tammy would suffer severe emotional trauma if forced to return to her mother's custody. Under these circumstances, the biological tie between mother and child is not determinative of the child's welfare. Her psychological integration into the Cordero family cannot be ignored. Thus, the ultimate disposition of the child

must be determined after careful consideration of many factors and the exercise of an informed judgment.

We recognize, "[i]t is no slight thing to deprive a parent of the care, and custody, and society of the child, or a child of the protection, guidance, and affection of the parent." *State v. Rasch*, 24 Wash. 332, 335, 64 P. 531 (1901). On the other hand, "irrespective of the natural emotions and sympathy aroused by a mother's tearful plea, the juvenile court and this court on appeal or certiorari must be guided and must function according to one paramount consideration in all child custody cases: *the welfare of the child.*" *In re Todd v. Superior Court*, 68 Wn.2d 587, 591, 414 P.2d 605 (1966).

In summary, we affirm the decision of the juvenile court to assume jurisdiction over the dependency petition despite the earlier California order terminating the Corderos' status as guardians. However, we find error with the court's refusal to hear additional evidence proffered by the Corderos. Therefore, we remand this case with directions to take additional evidence in support of the dependency petition. Thereafter, further dispositional proceedings must be held consistent with RCW 13.34 concerning dependent children.

GREEN, C.J., and MUNSON, J., concur.