[Nos. 52147-1-I; 52148-9-I. Division One. September 20, 2004.]

*In the Matter of the Dependency of* R.L., ET AL.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*,
v. ERIC JOHNSON, *Petitioner*.

*Linda Lillevik* and *Christine A. Jackson* (of *The Defender Association*), for petitioner.

*Christine O. Gregoire, Attorney General*, and *Katherine M. Tassi* and *Jonathan W. Milstein, Assistants*, for respondent.

BECKER, J. — The juvenile court made an emergency placement of appellant Eric Johnson's dependent daughters with their maternal grandmother based on a caseworker's opinion that Johnson should not be considered as a placement option. Johnson asked the court to reconsider the suitability of the placement with the grandmother and raised a substantial question as to the caseworker's credibility. By refusing to hear the testimony of Johnson and his witnesses at the hearing on his motion for reconsideration, the court failed to accord him the due process provided by statute and local rule. We reverse and remand for a new hearing.

Eric Johnson is the father of two young daughters, born in 1997 and 1999, who were declared dependent at an early

age because their mother was addicted to cocaine and Johnson was serving time. The Department of Social and Health Services (Department) placed them at first in the care of Johnson's father, Alfred, and then with Johnson in August 2001, when he was released from custody. Soon, Johnson allowed their mother, Jennifer Lynch, to resume the role of primary parent. The court formally placed the children with Lynch in August 2002, with weekend visitation allowed to Johnson. Jennifer Lynch lived with the girls and with her mother, Sue Lynch, in Tacoma.

Jennifer Lynch relapsed into drug use in February 2003. The court held an emergency placement hearing February 19, 2003. The Department's recommendation was to leave the girls in Tacoma in the care of their maternal grandmother, Sue Lynch. The Department's position was that Eric Johnson, the father, should not be considered as a placement option because he did not have a good track record of providing clean housing and adequate sleeping arrangements.

Johnson said he had just moved into his father's house and asked the court to place the children with him there. His father, Alfred Johnson, testified that the children had lived in his home earlier without any complaint that it was not a suitable environment for the girls.

Yvonne Brown, the court-appointed special advocate for the children (CASA), supported Johnson's request. She recommended that Johnson be given an adequate opportunity to demonstrate his ability to parent the children because Jennifer Lynch's inability to stay sober made it doubtful that she could be the permanent placement. She expressed a view that the caseworker for the Department was unfairly favoring the mother's side of the family.

Johnson asserted that Sue Lynch was planning a move to Camano Island. The caseworker then testified and said Sue Lynch was not moving, she intended to remain in the Tacoma residence where the girls had been living for the past year. Based on this representation that the girls would not have to move, the court entered orders temporarily

placing the girls with Sue Lynch. The court told Johnson that before the next review hearing on March 26, he should discuss with the Department what services would be needed to show that he could provide a stable placement.

One week later, on February 26, Johnson moved for reconsideration of the emergency placement decision. He alleged there was no evidence supporting the determination that Sue Lynch was an appropriate caretaker for the children or that he was not. He submitted a declaration signed by his attorney, stating that the attorney had talked to Sue Lynch and learned that she actually had moved to Camano Island, was planning to enroll the oldest girl in school there, and was expecting the caseworker to make a home visit soon.

The court granted Johnson's request for a hearing at which he proposed to take testimony from Sue Lynch and to argue for reconsideration of the placement decision. The hearing took place on March 14, 2003. Johnson had not successfully subpoenaed Sue Lynch, and she did not appear.

The court allowed Johnson to call the caseworker to testify. The caseworker defended her recommendation to place the children with Sue Lynch, but had to acknowledge that she had been accepting Sue Lynch's representations rather uncritically. She did not think the house where Lynch was supposed to meet Johnson looked like a "drug house," as Johnson's attorney suggested, but she admitted the couple she found living there would not give her their names.

Upon further examination it came out that the caseworker had not conducted a criminal background check of Sue Lynch before placing the children with her. And although she was aware by the time of the February 19 hearing that Sue Lynch had an extensive criminal history including drug use, she did not disclose it to the court because "you didn't inquire."[1]

---

[1] Report of Proceedings (Mar. 14, 2003) at 12.

On examination by the Department, the caseworker said she continued to have concerns about placing the girls with their father. She was particularly concerned that Johnson had failed to return the children on time to Sue Lynch after the last weekend visit and had not started parenting classes that week as promised. After some equivocation, the caseworker recommended placement with Johnson's father, Alfred.

Johnson then asked the court to allow him to call Don Minor, the supervisor of the children's court-appointed special advocate (CASA) Yvonne Brown, to impeach the testimony of the caseworker. Minor would have testified to the ease with which he had recently discovered the grandmother's extensive criminal history (which included more crimes than the caseworker knew about). Minor would have also testified that he had e-mailed and faxed the relevant documents to the caseworker, in contradiction to the caseworker's testimony that she had not received this information. The court said it was already apparent that the caseworker had not provided "criminal background on any of these people" at the previous hearing.[2] The court refused to allow Minor's impeachment testimony.

Johnson wished to explain that he did not return the girls to the custody of Sue Lynch because he suspected the house where she was waiting to pick up the girls was a known "drug house." The court refused Johnson's request to offer his own testimony:

> [Counsel]: Your Honor, the father would also like to testify regarding the house.
>
> [Commissioner]: I'm not going to allow him to testify.
>
> [Counsel]: And just as an offer of proof, his testimony would be regarding the drug house, and would assert his right to testify under RCW 13.34.090, just for the record.
>
> [Commissioner]: Thank you. Argument?[3]

---

[2] Report of Proceedings (Mar. 14, 2003) at 37.

[3] Report of Proceedings (Mar. 14, 2003) at 23-24.

Johnson argued that the court should place his daughters with him, or in the alternative with his father. Jennifer Lynch's attorney asked for continued placement with Sue Lynch. The children's court-appointed special advocate expressed dissatisfaction with the information provided by the caseworker, and questioned why the Department would be supportive of placement with Sue Lynch in view of her criminal history. She recommended placement with Johnson so long as he remained living in his father's home.

The court ordered the girls to be placed with Johnson's father. In making this decision, the court stated that Sue Lynch had not been "forthright."[4] But the court also found Johnson to be lacking in credibility:

> Mr. Johnson, your conduct was totally inappropriate to keep those children. That was an excuse. I don't buy anything you have said . . . . Your intent was to keep those children at all times and you are making excuses. And it was inappropriate.
>
> And if you had gone to your first parenting class and started into parenting classes, as you should have a long time ago, you would understand how jerking these kids around affects them.[5]

■ Johnson moved in this court for discretionary review of the order entered at the conclusion of the hearing on March 14, 2003. He claims that the court violated his due process rights at the hearing when it refused to allow him to testify and call witnesses. We accepted review to provide guidance with respect to due process in dependency review hearings. We review orders issued in dependency cases for abuse of discretion. *In re Welfare of J.H.*, 75 Wn. App. 887, 894, 880 P.2d 1030 (1994).

Johnson contends he had a right to call witnesses and to testify. He relies on the statute guaranteeing due process in dependency proceedings:

> Any party has a right to be represented by an attorney in all proceedings under this chapter, to introduce evidence, to be

---

[4] Report of Proceedings (Mar. 14, 2003) at 52.

[5] Report of Proceedings (Mar. 14, 2003) at 51.

heard in his or her own behalf, to examine witnesses, to receive a decision based solely on the evidence adduced at the hearing, and to an unbiased fact-finder.

RCW 13.34.090(1).

The Department responds that presentation of live testimony at motions hearings is not an absolute right, and that the court acted within the discretion provided by a local rule of the King County Superior Court governing review of dependency orders.

The local rule places limitations on oral testimony in dependency review proceedings. The rule presumes that the court will normally decide issues in contested hearings based on written reports and declarations. The court will allow oral testimony only after approving a party's motion requesting oral testimony, supported by affidavits and exhibits demonstrating that the case has "extraordinary features."[6] The Department argues that the evidence Johnson wished to present through testimony was available to him prior to the hearing and should have been communicated to the court through written declarations.

 The statute protects the due process of parents and other parties in "all proceedings" under the chapter relating to dependency and termination of the parent-child relation-

---

[6] The rule, in its entirety, states:

A party seeking authority to present oral testimony must file a motion requesting oral testimony together with affidavits setting forth the reasons testimony is necessary to a just adjudication of the issues, at the time the motion or response of that party is being filed. Working papers of these materials must also be submitted to the Judge assigned to the calendar on which the motion is set and that Judge will determine whether oral testimony will be allowed and/or set out any limitations without oral argument.

The affidavits and exhibits must demonstrate the extraordinary features of the case. Factors which may be considered include substantial questions of credibility on a major issue, insufficiency or inconsistency in discovery materials not correctable by further discovery, or particularly complex circumstances requiring expert testimony.

A motion for oral testimony may be joined by the other party, but an order providing for oral testimony cannot be entered by stipulation. The assigned Judge's decision will be communicated by writing or by telephone. If granted such a motion may require the setting of a special hearing time as determined by the assigned Judge.

King County LJuCR 3.9(c)(5)(D).

ship, chapter 13.34 RCW. But it does not mandate the same type of hearing in every phase of the proceedings. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). The fundamental requirement of due process is the right to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *accord In re Dependency of M.S.*, 98 Wn. App. 91, 94-95, 988 P.2d 488 (1999). The right to be heard does not necessarily mean the right to give oral testimony or call witnesses. *See In re Disciplinary Proceeding Against Deming*, 108 Wn.2d 82, 95, 736 P.2d 639 (1987).

Statutory requirements for regular judicial review of dependency orders create a high volume case load for the court and practitioners. The local rule is designed to expedite review within the flexible constraints of due process. The rule recognizes that even when motions are contested, the court will often be able to grasp the issues competently and efficiently without oral testimony. Written reports and declarations will typically furnish significant and reliable information.

■■ But where a statute grants a valuable right to a litigant, a local rule cannot restrict the exercise of that right. *In re Marriage of Lemon*, 118 Wn.2d 422, 424, 823 P.2d 1100 (1992). The local rule, notwithstanding its important practical function, cannot be given effect unless it is harmonized with RCW 13.34.090(1).

■ The statute embodies due process principles requiring "a full and meaningful opportunity to present evidence." *In re Welfare of Hansen*, 24 Wn. App. 27, 36, 599 P.2d 1304 (1979). In *Hansen* we held it was error to refuse testimony from a child's guardians and to base a dependency order solely on testimony from the child's estranged mother and grandmother. We said, "While we sympathize with the court's concern over the length of the hearing, the welfare of the child always remains paramount." *Hansen*, 24 Wn. App. at 36. Similarly, we have held it was violative of due process

for a court to presume that a mother's criminal history would disqualify her from being a placement for her dependent child. To deny the mother an opportunity to present evidence about her present abilities as a caregiver meant the placement decision was made "without consideration of all relevant factors," and that is not in a child's best interests. *In re Dependency of A.C.*, 74 Wn. App. 271, 279, 873 P.2d 535 (1994).

We have held that RCW 13.34.090(1), in conjunction with RCW 13.34.060, expressly permits all parties to present testimony at a shelter-care hearing regarding the need or lack of need for shelter care. "We note that the court must take great care in safeguarding a parent's due process rights by allowing witnesses to be examined. While we recognize the rapid fire nature of shelter-care proceedings, the court must be reasonable and here it was unreasonable not to allow [the mother's] witnesses to testify." *In re Dependency of H.*, 71 Wn. App. 524, 530-31, 859 P.2d 1258 (1993).

The lesson of these cases is that in contested hearings where the placement of a child is at issue, giving interested parties a meaningful opportunity to present evidence coincides with the best interests of the child. To assure consideration of relevant information and fulfill the statutory promise of a meaningful opportunity to present evidence, a local rule designed to promote efficiency must have plenty of flexibility. Allowing only one version of contested facts to be presented orally may lead, as in *Hansen*, to "a determination which lacks objectivity." *Hansen*, 24 Wn. App. at 36. A court may, of course, always employ the rules of evidence to limit testimony to issues relevant to the particular hearing and to exclude cumulative evidence.

King County's local rule identifies several useful and appropriate factors indicating when oral testimony and cross-examination should be permitted. One factor making a case "extraordinary" is the presence of "substantial questions of credibility on a major issue." King County LJuCR

3.9(c)(5)(D). As the United States Supreme Court has recognized, written submissions do not afford the flexibility of oral presentations, and they are a "wholly unsatisfactory basis for decision" where credibility and veracity are at issue. *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970).

Judging credibility without hearing live testimony can be quite prejudicial in a case of this nature. A decision once made is hard to undo because of the statutory preference for stability and permanence in a dependent child's living arrangements. "Any order made by the court in the case of a dependent child may be changed, modified, or set aside, only upon a showing of a change in circumstance or as provided in RCW 13.34.120." RCW 13.34.150. At a review hearing, a child who has been placed out of the home shall not be returned unless the reasons for removal no longer exist. RCW 13.34.138(1)(a). If the court erroneously finds a caseworker to be more credible than the parent, and on that basis refuses to consider allowing the child to return to the parent's home, the parent is one step closer to the initiation of termination proceedings.

Here, a substantial question was raised as to the credibility of the caseworker. Despite mounting evidence of the unsuitability of Sue Lynch as a placement, the caseworker defended her. She insisted that Eric Johnson was not a good placement for his daughters because he had not been punctual in returning them to Sue Lynch. The court should have granted Johnson's request to present more impeachment testimony and should have allowed Johnson to explain why he did not return the children to their grandmother's custody at an alleged drug house. Instead, the court adopted the caseworker's view that Johnson's criticism of Sue Lynch was an "excuse" for failing to return the children on time.[7] Without hearing Johnson's testimony, the court gave no credence to his position: "I don't buy anything you have said . . . your intent was to keep those

---

[7] Report of Proceedings (Mar. 14, 2004) at 57.

children at all times."[8] The court abused its discretion in refusing to hear testimony from Johnson and his witnesses.

The Department contends any error was harmless because Johnson's proffered testimony would have served to show only that Sue Lynch was not a suitable placement—a conclusion the court had already reached. But the court then decided to place the girls with Johnson's father, not with Johnson himself, just as the caseworker recommended at the end of the hearing. Johnson's request to become personally responsible for his daughters' care was supported at the time by their court-appointed special advocate. The court might have considered that request more seriously if Johnson had been able to establish that he, not the caseworker, was the more reliable reporter of the past week's events.

The Department further contends that Johnson's appeal should be dismissed as moot in view of subsequent events. The record on review currently reflects that the girls are still in the care of Johnson's father, Alfred Johnson. The court has adopted a permanent plan to continue this arrangement through a dependency guardianship, with an alternative concurrent plan of returning them to Johnson if he can fulfill the requirements of the dispositional plan. According to the record of the proceedings from a hearing on December 10, 2003, Johnson was allowed to testify and call witnesses, yet still was unable to establish that he was a suitable placement, as he was no longer living in his father's house and had not obtained stable housing of his own. The Department argues that the order of December 10, 2003 now governs the case, so that reversal of the order of March 14, 2003—the order at issue in this appeal—cannot provide effective relief.

This is not a situation where "the passage of time itself prevents any meaningful attempt to restore the circumstances" existing prior to the decision. *See Dependency of A.C.*, 74 Wn. App. at 280. Johnson has not asked that we

---

[8] Report of Proceedings (Mar. 14, 2004) at 51.

order the children to be placed with him. The remedy he seeks is an opportunity to be fully heard as he should have been heard on March 14, 2003. It is not too late for that remedy to be effective. We vacate the March 14 placement order, and order a new hearing for Johnson on his request to have the children placed with him.

Our disposition of this case does not limit the court to considering only the evidence that was available on March 14, 2003. Our intention is to expand the scope of evidence available to the court, not to restrict it. But the court should consider Johnson's position without prejudice from the passage of time and rulings made in the case since March 14, 2003. The question is whether he can, at this point in his daughters' lives, provide a suitable placement.

Vacated and remanded.

BAKER and AGID, JJ., concur.