IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Dependency of: | ) | No. 36257-4-III |
| | ) | |
| | ) | |
| | ) | PUBLISHED OPINION |
| C.R.O'F.[†] | ) | |
| | ) | |

LAWRENCE-BERREY, J. — Mary Smith[1] appeals after the juvenile court denied her motion to intervene in her nephew's dependency case. In her motion, she clarified that she sought to intervene so she could pursue a de facto parentage action. We hold that a juvenile court must permit a person to pursue a de facto parentage action if the person's sworn statement in support of the motion presents a prima facie case that they are a de facto parent. Here, Ms. Smith filed a sufficient sworn statement in support of her motion. We reverse the juvenile court and direct it to permit Ms. Smith to file her de facto parentage action.

---

[†] We refer to minors by their initials to protect their privacy interests. Gen. Order for the Court of Appeals, *In Re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

[1] To further protect C.R.O'F.'s privacy interests, we adopt a fictional name for his aunt.

No. 36257-4-III
*In re Dependency of C.R.O'F.*

FACTS

In June 2015, six-year-old C.R.O'F. was living at his grandmother's home with his grandmother, his aunt, and his siblings. His mother, who is Ms. Smith's twin sister, was living elsewhere at the time. The Department of Social and Health Services (Department) was concerned about the safety of C.R.O'F. and his siblings because of the condition of their home. There were numerous broken-down vehicles in the yard and there was garbage and debris inside and outside the home.

On June 17, 2015, a Family Team Decision Meeting was held in which it was decided that C.R.O'F. and his siblings could reside with Ms. Smith at a friend's house, pending background checks of Ms. Smith and the friend.

On August 18, 2015, a tragic fire on C.R.O'F.'s grandmother's property took the life of his mother and one of his sisters. After learning of the fire, the Department was concerned for C.R.O'F.'s and his surviving sister's safety and tried to locate them. The Department asked C.R.O'F.'s grandmother about them, and she said the children were with Ms. Smith, but she did not know where.

After several unsuccessful attempts to find Ms. Smith, the Department obtained a writ of habeas corpus and a warrant in aid of the writ. Ms. Smith was arrested while in

2

court where she was trying to obtain third-party custody of C.R.O'F. Shortly after her arrest, she led law enforcement to C.R.O'F. and his sister.

The Department filed a dependency petition for C.R.O'F. He was placed with his father and the petition was dismissed. C.R.O'F.'s father later abandoned him. On January 11, 2016, the Department filed a second dependency petition. On May 27, 2016, a juvenile court commissioner entered an order of dependency by default as to the father and placed C.R.O'F. in foster care.

On September 2, 2016, Ms. Smith petitioned the juvenile court for leave to intervene and to be designated C.R.O'F.'s de facto parent. A juvenile court commissioner denied Ms. Smith's motion because, in its view, Ms. Smith did not meet the requirements for a de facto parent and the requirements for intervention.

Ms. Smith moved the superior court for revision of the commissioner's order. The superior court denied Ms. Smith's motion because C.R.O'F.'s father's parental rights had yet to be terminated and intervention by Ms. Smith would disrupt the dependency's purpose—reunification. This order was not appealed. On October 21, 2016, the State

filed a notice that the child is legally free.[2]

In 2018, after C.R.O'F. had been in foster care for two years, he filed a motion for placement with his aunt. A juvenile court commissioner orally denied C.R.O'F.'s motion and kept him placed with his current foster placement. The commissioner found that C.R.O'F. had been improving with his current placement, Ms. Smith's home situation raised concerns of safety and appropriateness, she was not employed, she lacked a driver's license to transport C.R.O'F. to therapy sessions, and she had a criminal history.

C.R.O'F. and Ms. Smith moved to revise the commissioner's order. The superior court denied C.R.O'F.'s motion and ruled that Ms. Smith, who had not filed the original motion, had no right to request revision. This order was not appealed.

Around this time, in early June 2018, Ms. Smith filed three separate motions. In the first, she sought to stay C.R.O'F.'s dependency and adoption proceedings pending her de facto parentage petition. In the second, she sought to have the juvenile court waive

---

[2] RCW 13.34.210 provides in part: "If, upon entering an order terminating the parental rights of a parent, there remains no parent having parental rights, the court shall commit the child to the custody of the department willing to accept custody for the purpose of placing the child for adoption. If an adoptive home has not been identified, the department shall place the child in a licensed foster home, or take other suitable measures for the care and welfare of the child."

exclusive jurisdiction so she could file her de facto parent petition in domestic court.[3] In her declaration in support of these motions, she asserted that her family—consisting of her twin sister, their mother, and her sister's children—had lived together for years and was very close. She asserted that she lived with and raised C.R.O'F. almost his entire life and they had a very close bond. In addition, she provided specific details of how she acted like a mother to her nephew over the years. In the third, Ms. Smith asked to intervene in the dependency for the purpose of obtaining permission to file her de facto parentage action in domestic court. C.R.O'F. supported his aunt's motion for intervention.

The Department opposed Ms. Smith's motion and filed a declaration of one of its social workers. The social worker said she had done research into Ms. Smith and had learned that Ms. Smith (1) had been unable to maintain steady employment, (2) had unstable income, (3) had been repeatedly denied State benefits, (4) lived with a roommate in a home previously found to be unsafe, and (5) had several drug-related charges on her record.

---

[3] We infer from Ms. Smith's motion that she had been instructed she could not file her de facto parentage action in domestic court without first obtaining permission from juvenile court.

A juvenile court commissioner held a hearing on Ms. Smith's motions on July 23, 2018. The parties noted some confusion on what motions were being argued. The commissioner stated that the motion was one for intervention and Ms. Smith had to establish she had standing which she was attempting to do by arguing she was C.R.O'F.'s de facto parent. After hearing arguments, the commissioner orally denied Ms. Smith's motion to intervene.

On September 11, 2018, the commissioner's July 23 oral ruling was formalized in a written order. The order, entitled "Order Denying Intervention," reads in pertinent part:

> 1. Permissive intervention is a discretionary decision by the court and can occur when there is a question of law or fact in common that is not represented by another party to the case. Here [C.R.O'F.] has a guardian ad litem and an attorney, plus a social worker. The guardian ad litem presents to the court what is in [C.R.O'F.'s] best interest and [C.R.O'F.'s] lawyer brings to the court issues [C.R.O'F.] wants addressed. *Between these two parties all of* [*C.R.O'F.'s*] *interests are being met.*
> 2. Intervention is denied when it will take the focus off the goals of the dependency. At this point in the case, the focus has to be finality and permanency. RCW 13.34 promotes permanency at the earliest time in a case and promotes completed adoptions within 6 months of termination of parental rights. [C.R.O'F.] is in an adoptive home, who is ready to adopt [him] right now.
> 3. [Ms. Smith] is seeking intervention so she can bring a motion for leave to proceed so she can seek a finding that she is a de facto parent. It is unlikely [Ms. Smith] can meet the statutory criteria to be found a de facto parent. [Ms. Smith] does not have placement of [C.R.O'F.] now and did not have placement of him in either dependency one or two. [Ms. Smith] was denied [i]ntervention in the past by [another commissioner] and this was upheld on revision by [a superior court judge]. Nothing has changed in

6

regard to [Ms. Smith] since that ruling. One of the factors to be a de facto parent is that the natural parent consents to and fostered a parent-like relationship. Here, the biological father's wishes are unknown. [Ms. Smith] had limited contact with [C.R.O'F.] for a 4 year period of time. Since August of 2017 she has had weekly visits for one hour and since January 2018 she has weekly two hour visits, per order of the court. [Ms. Smith] does not have a parent-child relationship with [C.R.O'F.]. [Ms. Smith] has not been in a parental role for a length of time sufficient to have establish a bonded, dependent relationship, parental in nature with [C.R.O'F.].

4. Because [Ms. Smith] has already been denied intervention in the past and is unlikely to meet the statutory factors of a de facto parent she is unlikely to prevail in superior court. Intervention is denied as it will unnecessarily take the focus off permanency for [C.R.O'F.] and significantly delay adoption.

Clerk's Papers (CP) at 233-34 (emphasis added).

On September 18, 2018, Ms. Smith filed an amended notice of appeal. The notice

designated for review

the Order Denying Intervention . . ., the Order Denying a Waiver of Exclusive Jurisdiction for Superior Court to hear De Facto Parentage Petition and the Order Denying a Stay of the Adoption Proceedings Pending Decision of De Facto Parentage all decided on at the same hearing held on 07-23-2018 but entered and filed on 9/11/2018.

CP at 236 (alteration in original). There is no order filed on September 11, 2018 other

than the above-quoted Order Denying Intervention.

No. 36257-4-III
*In re Dependency of C.R.O'F.*


ANALYSIS

A.   APPEALABILITY

The State contends that the order denying intervention is not appealable as of right

under RAP 2.2, and this court should dismiss the appeal because it fails to meet the

standards for accepting discretionary review under RAP 2.3.

As a preliminary matter, RAP 2.2 and RAP 2.3 permit a "party" to appeal.

We construe "party" as including a person denied the right to intervene.  Any other

construction would render unreviewable a denied motion for intervention.

1.      *Appeal as of right*

RAP 2.2[a](6) allows a party to appeal "[a] decision terminating all of a *person's*

parental rights with respect to a child."  (Emphasis added.)  We note that the subsection is

not limited to termination of a "parent's" parental rights.  Because the subsection is not so

limited, we construe it as including persons, such as Ms. Smith, who sufficiently assert a

basis for having parental rights to a child.

Here, the juvenile court denied Ms. Smith an opportunity to establish that she is

C.R.O'F.'s de facto parent.  This refusal is tantamount to terminating whatever parental

rights, if any, she has.  We conclude that Ms. Smith may appeal the commissioner's order.


8

### 2.    *Discretionary review*

Although not necessary, we address whether Ms. Smith is entitled to discretionary review. Our conclusion that she is entitled to discretionary review provides an alternative basis for not dismissing the appeal.

RAP 2.3(b)(2) permits acceptance of discretionary review if "[t]he superior court[4] has committed probable error and the decision . . . substantially alters the status quo or substantially limits the freedom of a party to act."

Here, the commissioner committed probable error. One factor in the intervention analysis is whether the "applicant's interest is adequately represented by existing parties." CR 24(a)(2). Here, the commissioner did not consider whether *Ms. Smith's* interest was adequately represented by the existing parties. Instead, as shown in the italicized portion of the previously quoted order, the commissioner considered whether *C.R.O'F.'s* interest was adequately represented by existing parties.

Additionally, the order substantially limits Ms. Smith's freedom to act. As previously noted, Ms. Smith is a party for purposes of RAP 2.2 and RAP 2.3. Denial of intervention prevented Ms. Smith from adjudicating whether she is a de facto parent. As

---

[4] A decision of a court commissioner is the decision of the superior court if not timely revised. RCW 2.24.050.

9

an alternative basis for not dismissing the appeal, we conclude that discretionary review is appropriate under RAP 2.3(b)(2).

> B.     MOTION TO INTERVENE AS OF RIGHT

A trial court's ruling on a motion to intervene as a matter of right will be reversed if an error of law has occurred. *In re Adoption of M.J.W.*, 8 Wn. App. 2d 906, 915, 438 P.3d 1244 (2019). "An 'error of law' is 'an error in applying the law to the facts as pleaded and established.'" *Id.* (internal quotation marks omitted) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 302, 892 P.2d 1067 (1994)).

Here, Ms. Smith requested intervention only so she could file a de facto parentage petition. It is through this lens that we must decide whether the commissioner erred. But before we discuss intervention, we first discuss the nature of Ms. Smith's right.

> 1.     *Due process principles apply in favor of persons who have acted as a parent of a child for years*

In *In re Welfare of Hansen*, 24 Wn. App. 27, 29, 599 P.2d 1304 (1979), a child's guardians had provided the sole care of the child for eight years. The guardians were friends of the child's mother and agreed to care for the child because of the mother's marital problems and drug dependency. *Id.* Despite the fact that the child's mother had little contact with her for eight years, she successfully petitioned a California court for termination of the guardianship. *Id.* at 30.

The former guardians later filed a dependency petition in Washington.  *Id.*  At the

dependency hearing, the court limited the testimony to that of the child's mother and

maternal grandmother before finding the child dependent and expressing the view that the

child should be reunited with her mother.  *Id.*  We reversed because the trial court erred in

refusing to hear evidence proffered by the former guardians.  *Id.* at 36.  We explained that

due process principles apply to persons who have served as parents to a child:

> The Corderos are not [the child's] natural parents; nevertheless, they
> have stood in the relation of in loco parentis to [her] for many years.  The
> rights and liabilities arising out of the in loco parentis relationship are
> substantially similar to the relationship between parent and child.  *State ex
> rel. Gilroy v. Superior Court*, 37 Wn.2d 926, 933, 226 P.2d 882 (1951).
> Therefore, due process principles require that on remand the Corderos be
> given a full and meaningful opportunity to present evidence in support of
> their dependency petition.  *In re Luscier*, 84 Wn.2d 135, 137, 524 P.2d 906
> (1974); *In re Hagen*, 21 Wn. App. 169, 173, 584 P.2d 446 (1978).

*Id.*  Years later, our Supreme Court quoted and gave its imprimatur to this holding.

*See In re Dependency of J.W.H.*, 147 Wn.2d 687, 700, 57 P.3d 266 (2002).

Similar to *Hansen*, Ms. Smith asserted that she had raised and cared for C.R.O'F.

for most of his life until the Department removed him from her care.  Her declaration

contains all of the details for which a court might find that Ms. Smith is C.R.O'F.'s de

facto parent.  Ms. Smith's declaration sets forth a prima facie case that she is a de facto

parent. For this reason, due process principles entitle Ms. Smith to a full and meaningful opportunity to present evidence to adjudicate her de facto parentage claim.

We now turn to whether, having due process protections, Ms. Smith had a right to intervene so she could file a de facto parentage action in domestic court.

### 2. Intervention as of right

A trial court's ruling on a motion to intervene as a matter of right will be reversed if an error of law has occurred. *Adoption of M.J.W.*, 8 Wn. App. 2d at 915. "An 'error of law' is 'an error in applying the law to the facts as pleaded and established.'" *Id.* (internal quotation marks omitted) (quoting *Westerman*, 125 Wn.2d at 302).

CR 24(a)(2) permits, upon timely application, a person to intervene when

[1] the applicant claims an interest relating to the property or transaction which is the subject of the action and [2] the person is so situated that the disposition of the action may as a practical matter impair or impede the person's ability to protect that interest, [3] unless the applicant's interest is adequately represented by existing parties.

We first address the procedural component of the rule: whether Ms. Smith made a timely application for intervention. Ms. Smith requested intervention a few months after C.R.O'F. was placed in foster care. This request put everyone on notice of her de facto parentage claim. A commissioner denied Ms. Smith's request for intervention and a superior court judge denied revision. We do not fault Ms. Smith for failing to renew her

motion to intervene weeks or months after the superior court denied her revision motion. As the court commissioner noted in paragraph 3 of the previously quoted order, nothing had changed after the superior court's denial of intervention to warrant a change in that order. We conclude that Ms. Smith made a timely application for intervention by giving everyone early notice of her de facto parentage claim.

We now address the three substantive components of CR 24(a)(2). The first substantive component asks whether the applicant claims an interest relating to the transaction that is the subject of the action. Here, Ms. Smith claims she is her nephew's de facto parent. If she is, she is a necessary party to the dependency action. Ms. Smith meets the first component.

The second substantive component asks whether the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest. By the time Ms. Smith renewed her request to intervene, C.R.O'F. had been declared a dependent and adoption was imminent. C.R.O'F.'s adoption would impair Ms. Smith's ability to protect her unadjudicated de facto parentage claim. Ms. Smith meets the second component.

The third substantive component asks whether the existing parties adequately protect Ms. Smith's interest. Neither the Department nor C.R.O'F.'s guardian ad litem

were going to protect Ms. Smith's unadjudicated de facto parentage claim. Both wanted

to move forward with the adoption and both objected to Ms. Smith's intervention. And

C.R.O'F., although supportive of his aunt's motion, had no authority to actually

adjudicate her claim. Because Ms. Smith meets all three substantive components of

CR 24(a)(2), we conclude that the commissioner erred by not granting Ms. Smith's

motion to intervene so she could file her de facto parentage petition in domestic court.

### 3. The Department's arguments

Citing various authorities, the Department argues that no Washington court has

concluded that persons other than parents, guardians, or custodians have a right to

participate in dependency actions. Our holding does not depart from this precedent.

Here, Ms. Smith asserts that she is C.R.O'F.'s de facto parent. "[A] *de facto* parent

stands in legal parity with an otherwise legal parent, whether biological, adoptive, or

otherwise." *In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005); *In re

Custody of A.F.J.*, 179 Wn.2d 179, 182, 314 P.3d 373 (2013).

The Department next argues that Ms. Smith is not entitled to intervene because she

is not a parent, but only claims to have parental rights. This position is incongruent with

*Hansen*, discussed previously. There, the Corderos were entitled to due process

protections even though they no longer were the child's legal guardians. Their right to

14

due process protections arose because of their past efforts of caring for the dependent child. Similarly here, Ms. Smith's due process protections arise because of her past efforts of caring for C.R.O'F.

The Department next argues that permitting Ms. Smith to adjudicate her de facto parentage claim would delay finality for C.R.O'F. We are sensitive to a dependent's need for finality. However, "a *de facto* parent stands in legal parity with an otherwise legal parent, whether biological, adoptive, or otherwise." *Parentage of L.B.*, 155 Wn.2d at 708. If Ms. Smith indeed is C.R.O'F.'s de facto parent, the Department may not obtain finality for C.R.O'F. and have him adopted without first terminating Ms. Smith's parental rights in a manner consistent with the dependency and the termination statutes.

The Department next argues that two commissioners and a superior court judge had previously found Ms. Smith to be an unsuitable placement for C.R.O'F. This argument shows a fundamental misunderstanding of the rights of a de facto parent. If Ms. Smith is a de facto parent but cannot adequately care for C.R.O'F., the Department must try to remedy her parental deficiencies in this dependency action. The Department may not ignore Ms. Smith's parental rights simply because they are unadjudicated.

Our holding is not inconsistent with *In re Dependency of J.H.*, 117 Wn.2d 460, 815 P.2d 1380 (1991), a case the Department asserts is controlling. There, foster parents

of two children sought to intervene to challenge the removal of the children from their home to another foster home. *Id.* at 462. The juvenile court denied their request to intervene. *Id.* The Supreme Court held that foster parents had only a permissive right to intervene, and the juvenile court did not abuse its discretion. *Id.* at 471-72. The court further held that the foster parents were not entitled to a judicial hearing before the loss of their foster care relationship. *Id.* at 471, 477. Throughout these holdings, the court stressed the limited expectation interests created in favor of foster parents by foster care contracts and state laws.

*J.H.* is readily distinguishable. The limited expectation interest of foster parents is not comparable to the broad rights bestowed on de facto parents. Both by common law, *see Parentage of L.B.*, 155 Wn.2d 679, and now by statute, *see* RCW 26.26A.110 and RCW 26.26A.440, de facto parents have the same rights as biological parents. As explained previously, de facto parents are entitled to a "full and meaningful opportunity to present evidence" to substantiate their de facto parentage claims. *See J.W.H.*, 147 Wn.2d at 700.

We direct the juvenile court to stay the adoption proceedings and to grant Ms. Smith's motion for intervention so she can file a de facto parentage petition in family

16

No. 36257-4-III
*In re Dependency of C.R.O'F.*

court. The result of that petition will dictate further proceedings in the dependency action.

Reversed and remanded.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____       _____
Siddoway, A.C.J.                Fearing, J.

17