# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Dependency of | No. 48299-1-II |
| S.K-P. | |
| | PUBLISHED OPINION |

WORSWICK, P.J. — SK-P asks us to determine (1) whether children in dependency proceedings have a categorical procedural due process right to court-appointed counsel under article I, section 3 of the Washington Constitution and the Fourteenth Amendment to the United States Constitution, and (2) if not, whether a case-by-case application of the *Mathews*[1] balancing test is appropriate to evaluate a dependent child's request for the appointment of counsel. We hold that children in dependency proceedings do not have a categorical due process right to court-appointed counsel and that juvenile courts should use the *Mathews* balancing test when evaluating a dependent juvenile's request for court-appointed counsel. We affirm.

---

[1] *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S. Ct. 893, 47 L. Ed. 18 (1976) (applying a three-factor balancing test to a claim of a violation of procedural due process).

No. 48299-1-II

FACTS

I. PROCEDURAL FACTS

SK-P entered foster care when she was seven years old.  During her dependency proceedings, SK-P requested legal representation, and Pierce County intervened for the limited purpose of opposing SK-P's request for the appointment of counsel based on Pierce County's financial interests.  The juvenile court denied SK-P's request after applying the *Mathews* test. SK-P sought, and we granted, discretionary review.

The same day we granted review, the Department of Social and Health Services (the Department) dismissed SK-P's dependency.  Although this appeal is moot due to the dependency's dismissal, it involves matters of continuing and substantial public interest.  We agreed to review two issues:  first, whether the Washington Constitution mandates the appointment of counsel for all children in dependency proceedings; and second, if children do not have a categorical right to court-appointed counsel in dependency proceedings, whether the juvenile court should apply the *Mathews* test when evaluating a dependent child's request for court-appointed counsel.[2]  Ruling Den. Court-Initiated Mot. to Dismiss, *In re Dependency of S.K-P.*, No. 48299-1-II, at 3 (Wash. Ct. App. May 25, 2016).

---

[2] We also allowed the following parties to submit briefing as amicus curiae:  Center for Children and Youth Justice, Children's Rights Inc., First Star Institute, Fred T. Korematsu Center for Law and Equality, Juvenile Law Center, Lawyers for Children, Legal Counsel for Youth and Children, Mockingbird Society, National Association of Counsel for Children, Northwest Justice Project, Professor Michael J. Dale of the Nova Southeastern University Law Center Children and Families Clinic, TeamChild, Washington Defender Association, Disability Rights Washington, American Civil Liberties Union of Washington, Foster Parent Association of Washington State.

2

## II. DEPENDENCY PROCEEDINGS GENERALLY

When the Department receives a report that a child is alleged to have been abused, neglected, or abandoned it is required to investigate. RCW 26.44.050. If the Department determines that the "child's health, safety, and welfare will be seriously endangered if [he or she is] not taken into custody" and there is potential "imminent harm" to the child, the Department may take the child into protective custody under RCW 13.34.050. If the child is taken into protective custody, the Department then files a petition for dependency of the child. WAC 388-15-041. The juvenile court is required to hold a shelter care hearing within 72 hours to determine whether, under the Department's petition, it is in the "best interests of the child" to return home or remain in state custody. RCW 13.34.065(1)(a).

At the initial shelter care hearing, the juvenile court determines the child's placement and whether the child can be safely returned home in an in-home placement conditioned on certain services being provided to the child and parent or in an out-of-home placement with a suitable relative, guardian, or foster care provider. RCW 13.34.065(4). A child who has been removed from his or her home has a right to preferential placement with a relative or known suitable adult. RCW 13.34.130(5). The court also determines the nature of any contact the child may have with his or her parents and siblings under RCW 13.34.065(5)(a).

If a parent contests whether a child is "dependent," the juvenile court must hold an evidentiary "fact-finding hearing" to determine whether a continued dependency is warranted. RCW 13.34.110. At the hearing, the State bears the burden of establishing by a preponderance

3

of the evidence that the child meets one of the statutory definitions of dependency.[3]  *In re Dependency of Schermer*, 161 Wn.2d 927, 942, 169 P.3d 452 (2007).

If the court finds the child to be dependent, it must enter an order determining, among other things, placement of the child, visitation with parents and siblings, the school the child will attend, and a plan for services tailored to correct any identified parental deficiencies.  RCW 13.34.130.  Typically, the juvenile court also determines the needs of the child, the parents' ability to meet those needs, and what services can be provided to assist the parents in meeting the needs of the child.  RCW 13.34.130(1).

A dependency proceeding includes ongoing review hearings to assess the status of the case and whether the needs of the child are being met, whether the parental deficiencies are being addressed, and what progress each parent has made or is required to make in order for the court to allow the child to safely return home.  RCW 13.34.138(1).  The review hearings occur until either the court orders that the child return home and dismisses the dependency, orders a guardianship for the child, enters an order terminating parental rights and the child is legally adopted, or the child ages out of the foster care system.  RCW 13.34.138(1).

If the Department determines that termination of parental rights is appropriate, it files a petition seeking termination under a new cause number.  RCW 13.34.132.  Assuming the termination goes to trial, the Department must prove the parent is unfit such that the legal right of

---

[3] A "dependent" child is defined as any child who (a) has been abandoned; (b) is abused or neglected by a person legally responsible for the care of the child; (c) has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances that constitute a danger of substantial damage to the child's psychological or physical development; or (d) is receiving extended foster care services.  RCW 13.34.030(6).

a parent to the care, custody, and control of her child should be terminated. RCW 13.34.180(1), .190.

III. HISTORICAL RIGHT TO APPOINTED COUNSEL IN DEPENDENCY & TERMINATION PROCEEDINGS

Currently in Washington, children do not have a categorical due process right to court-appointed counsel in dependency or termination proceedings. Statutory law and court rules grant juvenile courts the discretion to decide whether to appoint counsel to a child during dependency proceedings. RCW 13.34.100(7); JuCR 9.2(c)(1).[4] In 2010, the legislature specifically required that children 12 years and older subject to dependency proceedings be informed of their right to request counsel and that the children be asked every subsequent year whether they wish to exercise that right. RCW 13.34.100(7).[5] Additionally, some counties routinely appoint counsel

---

[4] JuCR 9.2(c) states,

**Dependency and Termination Proceedings**. The court shall provide a lawyer at public expense in a dependency or termination proceeding as follows:
(1) Upon request of a party or on the court's own initiative, the court shall appoint a lawyer for a juvenile who has no guardian ad litem and who is financially unable to obtain a lawyer without causing substantial hardship to himself or herself or the juvenile's family. The ability to pay part of the cost of a lawyer shall not preclude assignment. A juvenile shall not be deprived of a lawyer because a parent, guardian, or custodian refuses to pay for a lawyer for the juvenile. If the court has appointed a guardian ad litem for the juvenile, the court may, but need not, appoint a lawyer for the juvenile.

[5] RCW 13.34.100(7) states,

(c) Pursuant to this subsection, the department or supervising agency and the child's guardian ad litem shall each notify a child of his or her right to request an attorney and shall ask the child whether he or she wishes to have an attorney. The department or supervising agency and the child's guardian ad litem shall notify the child and make this inquiry immediately after:
(i) The date of the child's twelfth birthday;
(ii) Assignment of a case involving a child age twelve or older; or
(iii) July 1, 2010, for a child who turned twelve years old before July 1, 2010.
(d) The department or supervising agency and the child's guardian ad litem shall repeat the notification and inquiry at least annually and upon the filing of any

for children in dependency proceedings.[6]  Moreover, all Washington juvenile courts must appoint counsel for every child whose parents' parental rights have been terminated for six months, regardless of the child's age.  RCW 13.34.100(6).

In 2012, our Supreme Court addressed whether the Fourteenth Amendment compels the appointment of counsel to children in *termination* proceedings.[7]  *In re Dependency of M.S.R.*, 174 Wn.2d 1, 20, 271 P.3d 234 (2012).  The court recognized that children involved in termination proceedings[8] have vital liberty interests at stake and may be constitutionally entitled to court-appointed counsel to protect those interests, but it held that whether a child is constitutionally entitled to court-appointed counsel must be decided on a case-by-case basis. *M.S.R.*, 174 Wn.2d at 5.

On the other hand, Washington has long recognized parents' fundamental liberty interests in the right to parent their children, which compels a constitutional due process right to court-appointed counsel for all parents in dependency and termination proceedings.  *See In re Welfare of Luscier*, 84 Wn.2d 135, 138, 524 P.2d 906 (1974); *see also In re Welfare of Myricks*, 85

---

motion or petition affecting the child's placement, services, or familial relationships.
Additionally, the court is to inquire whether the child wants counsel.

[6] For example, King County appoints attorneys for all children starting at age 12.  King County LJuCR 2.4(a).  Benton/Franklin County appoints attorneys for all children starting at age 8. Benton County LJuCR 9.2(A)(1).

[7] The court expressly declined to consider whether the Washington State Constitution compelled the appointment of counsel.

[8] The *M.S.R.* opinion discussed dependency and termination proceedings throughout the opinion but included a footnote stating, "Nothing in this opinion should be read to foreclose argument that a different analysis would be appropriate during the dependency stages."  174 Wn.2d at 22 n.13.

Wn.2d 252, 254, 533 P.2d 841 (1975). In *Luscier*, our Supreme Court held that both article I, section 3 of the Washington Constitution and the Fourteenth Amendment to the United States Constitution required appointment of counsel for parents subject to termination of parental rights proceedings. 84 Wn.2d at 138.

The following year, in *Myricks*, 85 Wn.2d at 254-55, our Supreme Court extended the right to court-appointed counsel for parents in dependency proceedings on the same grounds. Two years later, in 1977, the legislature codified parents' right to counsel during dependency and termination proceedings. RCW 13.34.090. In 1981, the United States Supreme Court decided *Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), which held that parents facing termination of their parental rights do *not* have a categorical right to the court-appointed counsel under the Fourteenth Amendment. Our Supreme Court has since recognized that *Lassiter* "overruled the federal constitutional component" of *Luscier* and *Myricks. In re Dependency of M.H.P.*, 184 Wn.2d 741, 759, 364 P.3d 94 (2015).

Although the federal constitutional underpinnings of *Luscier* and *Myricks* were abrogated by *Lassiter*, 452 U.S. at 31, our courts, without conducting a *Gunwall*[9] analysis, have recognized their continued validity on state constitutional grounds.[10] *See In re Dependency of G.G. Jr.*, 185 Wn. App. 813, 826 n.18, 344 P.3d 234, *review denied*, 184 Wn.2d 1009 (2015) (Stating, "Our

---

[9] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

[10] We note, however, that no Washington court has directly held that *Luscier* and *Myricks* remain good law. *See Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 712, 257 P.3d 570 (2011) (noting that "it remains undetermined whether the *Lassiter* decision by the United States Supreme Court has eroded the constitutional underpinnings of this court's decision in *Luscier*," but nonetheless assuming its continued viability).

courts have recognized that 'the full panoply of due process safeguards applies to deprivation hearings' and that the right to counsel in parental termination proceedings derives from constitutional due process provisions. . . . *Lassiter* does not diminish the vitality of the due process based right to counsel in termination proceedings.") (internal quotation marks omitted) (quoting *In re Welfare of J.M.*, 130 Wn. App. 912, 921, 125 P.3d 245 (2005)); *see also In re Marriage of King*, 162 Wn.2d 378, 386, 174 P.3d 659 (2007) (citing *Myricks* to distinguish between the "fundamental parental liberty interest at stake in a termination or dependency proceeding" and the liberty interest at stake in a dissolution proceeding); *see also In re Dependency of Grove*, 127 Wn.2d 221, 237, 897 P.2d 1252 (1995) (citing *Luscier* and *Myricks* as examples of "fundamental liberty interest" protected by due process); *see also M.H.P.*, 184 Wn.2d at 759; *see also In re Welfare of Hall*, 99 Wn.2d 842, 846, 664 P.2d 1245 (1983) (holding that the right to counsel in child deprivation proceedings finds its basis in state law). Given the consistency with which our courts have continued to affirmatively cite *Luscier* and *Myricks*, we assume their continued validity.

It is against this background that we consider SK-P's claims.

ANALYSIS

SK-P argues that children in dependency proceedings have a categorical right to appointed counsel under the due process clauses of both the Washington and United States Constitutions. We disagree and hold that neither the Washington nor the United States Constitutions require juvenile courts to appoint counsel for children who are the subject of dependency proceedings.

SK-P, supported by amici, contends that the current dependency system is constitutionally inadequate because it does not guarantee court-appointed counsel to all children

in dependency proceedings.[11]  Whether a statutory scheme is constitutional is a question of law

that we review de novo.  *M.S.R.*, 174 Wn.2d at 13.  "We presume that statutes are constitutional,

and the challenger bears the burden of showing otherwise."  *M.S.R.*, 174 Wn.2d at 13.

## I. *GUNWALL*

In *Gunwall*, our Supreme Court responded to critiques that state appellate courts'

frequent reliance on individual rights provisions of state constitutions was leading to result-

oriented decisions.  *See also* Hugh D. Spitzer, *New Life for the "Criteria Tests" in State

Constitutional Jurisprudence:  "Gunwall is Dead—Long Live Gunwall!"*, 37 RUTGERS L. J.

1169 (2006).  The *Gunwall* court explained, "The difficulty with such decisions is that they

establish no principled basis for repudiating federal precedent and thus furnish little or no

rational basis for counsel to predict the future course of state decisional law."  *Gunwall*, 106

Wn.2d at 60.  The court continued, "[S]tate courts should be sensitive to developments in federal

law.  Federal precedent in areas addressed by similar provisions in our state constitutions can be

meaningful and instructive."  106 Wn.2d at 60.

In *Gunwall*, the court articulated six nonexclusive neutral factors relevant in determining

whether, in a given context, the Washington Constitution should be given an interpretation

independent from that given the United States Constitution:  (1) the textual language, (2)

---

[11] SK-P argues that she is not asking us to declare RCW 13.34.100 unconstitutional, referencing *In re Interest of T.M.*, 131 Haw. 419, 436 n.26, 319 P.3d 338 (2014), where the Supreme Court of Hawaii explained, "[O]ur decision does not render [state law], which allows courts the discretion to appoint counsel on a case-by-case basis, unconstitutional.  Rather, our decision augments [state law] in recognition of the due process protection in the Hawai'i Constitution afforded to parents."  But the Department's characterization of SK-P's argument as a facial challenge to the statutory scheme is consistent with our Supreme Court's approach to similar arguments.  *See M.S.R.*, 174 Wn.2d at 12-13.  Thus, we analyze this issue under constitutional principles.

differences in the texts, (3) constitutional history, (4) preexisting state law, (5) structural differences, and (6) matters of particular state or local concern. 106 Wn.2d at 58.

When presented with a claim that a provision of the Washington Constitution provides different protection than is provided under a provision of the United States Constitution, we first determine whether the state provision should be given an independent interpretation from the federal provision by analyzing the six nonexclusive, neutral *Gunwall* factors. *Madison v. State*, 161 Wn.2d 85, 93, 163 P.3d 757 (2007). If we determine that an independent analysis is warranted, we then analyze "'whether the provision in question extends greater protections for the citizens of this state.'" *Madison*, 161 Wn.2d at 93 (quoting *State v. McKinney*, 148 Wn.2d 20, 26, 60 P.3d 46 (2002)).

SK-P argues that we need not conduct a *Gunwall* analysis before engaging in a state constitutional analysis because there is no federal jurisprudence addressing a child's right to counsel in the dependency context. She argues that a *Gunwall* analysis is reserved for situations where there is already federal jurisprudence on point forcing the question of whether the parallel Washington constitutional provision affords greater protection.

SK-P correctly notes that the United States Supreme Court has not addressed a child's right to counsel in the dependency context. But Washington courts have never required that there be federal precedent precisely on point before engaging in a *Gunwall* analysis, and we decline to take such an approach for the first time here. *See King*, 162 Wn.2d at 392; *see also Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 710, 257 P.3d 570 (2011); *see also* Spitzer, *supra* at 1170 ("[*Gunwall*] has proven to be a useful step-by-step process for briefing and analyzing *any* state constitutional provision, regardless of whether that provision has a federal analog."). Moreover, when properly and thoroughly applied, a *Gunwall* analysis assists courts in viewing

an issue from all angles, taking into consideration related federal jurisprudence and our state's statutory, common, and constitutional law. "[T]he *Gunwall* factors parallel inquiries made when interpreting a state constitutional provision to determine the extent of the protection it provides in a particular context." *Madison*, 161 Wn.2d at 95-96.

Because the parties have adequately briefed the *Gunwall* factors, we consider whether we should analyze article I, section 3 independently from the Fourteenth Amendment in this context. *See Malyon v. Pierce County*, 131 Wn.2d 779, 791, 935 P.2d 1272 (1997). We hold that an independent state constitutional analysis is appropriate here.

A.      *Factors 1 & 2:  Text of the Parallel Provisions*

We generally examine the first two *Gunwall* factors, the textual language and any differences in text, together because they are closely related. *State v. Jorgenson*, 179 Wn.2d 145, 152-53, 312 P.3d 960 (2013). The Washington Constitution's due process clause provides, "No person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3. The parallel provision in the federal constitution provides in pertinent part, "No state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

Because there is no significant difference between the language used in the parallel provisions of the state and federal due process clauses, these factors do not support an independent state constitutional analysis.[12] *State v. Foster*, 135 Wn.2d 441, 459, 957 P.2d 712 (1998).

---

[12] SK-P's argument that despite the identical language, our state constitution should be interpreted independently unless historical evidence shows the framers intended otherwise, is based on a dissent from *State v. Ortiz*, 119 Wn.2d 294, 315-19, 831 P.2d 1060 (1992) (Johnson, J., dissenting), which is unpersuasive.

B.       *Factor 3: State Constitutional History*

The "third *Gunwall* factor directs the court to determine whether state constitutional history and common law reflect an intention to confer greater protection from the state government than has been afforded by the federal constitution." *Foster*, 135 Wn.2d at 459-60.

SK-P argues that protecting individual rights lies at the heart of our state constitution and that it has historically provided greater protections for the welfare of children than the federal constitution. She contrasts the Washington Constitution's two references to the care of children, in article IX, section 1 and article XIII, section 1, with the federal constitution's silence on the welfare of children. Article IX, section 1 provides that it is the "paramount duty of the state to make ample provision for the education of all children residing within its borders." Article XIII, section 1 requires the state to foster and support institutions for the benefit of youth with physical or developmental disabilities or mental illness and "such other institutions as the public good may require." Although these provisions address children's needs, they are unrelated to children's due process rights.

Moreover, article I, section 3 was adopted without modification or debate. *Journal of the Washington State Constitutional Convention, 1889*, (Beverly Paulik Rosenow ed. 1962). At the time, the federal due process clause had a nearly 100-year history. As it pertains specifically to article I, section 3, there is little constitutional history supporting an independent state constitutional analysis.

Ultimately, this third factor does not weigh in favor of an independent state constitutional analysis.

C.      *Factor 4:  Preexisting State Law*

In applying factor four of the *Gunwall* criteria, we focus on the context in which the issue involving the state constitutional right is raised.  *Foster*, 135 Wn.2d at 461.  Here, we examine preexisting state law relevant to a child's right to court-appointed counsel in dependency proceedings.

Washington case law is unclear as to the meaning of "preexisting" for the purposes of this factor.  Some courts have focused exclusively on state law that existed at the time the Washington Constitution was adopted.  *See Malyon*, 131 Wn.2d at 797 (noting that the preexisting state law factor usually pertains to state law preexisting ratification).  Other courts have considered the entire body of law in existence before the present controversy to see what kind of protection has historically been accorded in that context.

For example, in *State v. Johnson*, 128 Wn.2d 431, 443-46, 909 P.2d 293 (1996), our Supreme Court conducted a *Gunwall* analysis to determine whether article I, section 7 provided greater protection for privacy rights for items found in a vehicle than the Fourth Amendment.  Applying factor four, the court looked to the Code of 1881, adopted before statehood, as well as Washington's statutory law existing at the time of the case to conclude that Washington's "long history of regulating travel in this state strongly supports independent state constitutional analysis." *Johnson*, 128 Wn.2d at 446.  Indeed, in *Gunwall* itself, our Supreme Court traced the history of relevant law from territorial days to the present.  106 Wn.2d at 61-62.  Therefore, we examine not only the law preceding the adoption of the Washington Constitution but also

13

examine the current law to fully assess Washington's approach to children's due process rights in dependency proceedings.[13]

Before the early 1800s, homeless or neglected children were housed in adult prisons because no alternatives existed. Mary Kay Becker, *Washington State's New Juvenile Code: An Introduction*, 14 GONZ. L. REV. 289 (1979). The social reform movement of the 19th century "responded by establishing refuge houses and reform schools" for children, and the courts severed parental ties and committed children to reform schools without legal process. Becker, *supra* at 289. In 1905 and 1909, the legislature created juvenile courts. Becker, *supra* at 290. In 1913, chapter 13.04 RCW became effective establishing a wide range of powers, duties, and procedural guidelines and giving courts the authority to intervene in cases where a child was found to be dependent. Becker, *supra* at 290.

Over a century ago in *State v. Rasch*, 24 Wash. 332, 335, 64 P. 531 (1901), Washington recognized, "It is no slight thing to deprive a parent of the care, custody, and society of a child, or a child of the protection, guidance, and affection of the parent." More recently, in *In re Parentage of L.B.*, 155 Wn.2d 679, 712-13 n.29, 122 P.3d 161 (2005), our Supreme Court explained that when "adjudicating the 'best interests of the child,' we must . . . remain centrally focused on those whose interests with which we are concerned, recognizing that not only are they often the most vulnerable, but also powerless and voiceless."

Our Supreme Court recognized long ago that parents subject to dependency and termination proceedings have a fundamental liberty interest in the right to parent their children

---

[13] Including post-ratification state law in our consideration of factor four alters our conclusion on this factor's impact. Exclusively relying on preratification law would likely result in this factor not supporting an independent state constitutional analysis.

and a constitutional right to court-appointed counsel when the State seeks to terminate that right. *Myricks*, 85 Wn.2d at 253-54; *Luscier*, 84 Wn.2d at 136-39. In contrast, the United States Supreme Court held that the federal constitution does not require court-appointed counsel in every parental termination proceeding. *Lassiter*, 452 U.S. at 31.

Moreover, under federal constitutional law, the right to court-appointed counsel attaches only where physical liberty is at stake, unless a different result is necessary under the balancing test set out in *Mathews*. On the other hand, the Washington Constitution extends the right to court-appointed counsel to cases in which "a fundamental liberty interest . . . is at risk." *Grove*, 127 Wn.2d at 237.

Federal statutory law does not address the appointment of counsel for children in dependency proceedings, but Washington law has become increasingly protective of children's due process rights, particularly in the dependency context. In its 2010 amendments to RCW 13.34.100, .105, and .215, the legislature specifically found that "inconsistent practices in and among counties in Washington . . . resulted in few children being notified of their right to request legal counsel." LAWS OF 2010, ch. 180, § 1. The 2010 amendments require that both the State and the guardian ad litem (GAL)[14] notify a child age 12 or older of the right to request appointed counsel and ask the child if she wants appointed counsel. RCW 13.34.100.

In 2014, the legislature again amended RCW 13.34.100, establishing a right to court-appointed counsel for dependent children of any age when both parents' rights have been terminated and more than six months has passed. The amendments also permit juvenile courts to

---

[14] A GAL is a person appointed by the juvenile court to represent the best interests of a child in court proceedings. RCW 13.34.030(11).

appoint counsel to children in *any* dependency action, either sua sponte or upon request of the parent, child, GAL, caregiver, or the Department. RCW 13.34.215(2) allows for children to petition for reinstatement of parental rights and be appointed counsel in such a proceeding. RCW 13.34.267(6) requires counsel be appointed for youth in extended foster care. RCW 13.34.020 requires that children's rights take precedence, including their basic rights to nurturing, to physical and mental health, to a safe, stable and permanent home, and to speedy resolution of the proceeding.

Washington's long history and tradition of protecting children in dependency proceedings lends support to our decision to conduct an independent state constitutional analysis. *See Gunwall*, 106 Wn.2d at 66.

D.      *Factor 5:  Structural Differences Between State and Federal Constitutions*

The fifth *Gunwall* factor requires us to analyze structural differences between the state and federal constitutions. 106 Wn.2d at 66. "Our consideration of this factor is always the same; that is that the United States Constitution is a grant of limited power to the federal government, while the state constitution imposes limitations on the otherwise plenary power of the state." *Foster*, 135 Wn.2d at 458-59 (emphasis omitted). Consequently, the fifth *Gunwall* factor always supports an independent state constitutional analysis.

E.      *Factor Six:  Matters of Particular State Interest or Local Concern*

In considering factor six of the *Gunwall* criteria, we focus specifically on the context in which the issue involving the state constitutional right is raised. *Foster*, 135 Wn.2d at 461. Factor six requires us to determine whether the children's right to court-appointed counsel in dependency proceedings is a matter of such singular state interest or local concern that our constitution should be interpreted independently of the federal constitution. *Foster*, 135 Wn.2d

at 461. The impact on children's liberty interests in dependency proceedings depends on our state laws, and our state has a particularly strong interest—much stronger than any federal interest—in protecting children's liberty and ultimately coming to the best decisions through dependency proceedings. Consequently, factor six weighs in favor of an independent state constitutional analysis.

F.      *Other Considerations*

SK-P urges us to consider trends among the states and international law. She notes that the *Gunwall* factors are deliberately nonexclusive. Although we recognize the trend toward court-appointed counsel for children in dependency proceedings,[15] such a consideration is not helpful in determining the difference between our state constitution and federal constitution.

Considering the *Gunwall* factors together, we hold that they weigh in favor of an independent state constitutional analysis. Although we conclude that article I, section 3 should be read independently from the Fourteenth Amendment in the dependency context, where that independence leads is a separate question.[16] Because a thorough *Gunwall* analysis here reveals

---

[15] Thirty-two states and the District of Columbia provide children a categorical right to court-appointed counsel in dependency proceedings. Additionally, the American Bar Association has promulgated a "Model Act Governing the Representation of Children in Abuse, Neglect, and Dependency Proceedings," which recommends independent counsel to children in every child welfare case. Last year the Washington State Bar Association adopted a resolution supporting the same. In 2015, the Washington State Bar Association Board of Governors adopted a resolution in support of attorney representation for children in all dependency proceedings.

[16] Courts' application of *Gunwall* has evolved over the years. For example, the lead opinion in *State v. Gocken*, 127 Wn.2d 95, 102-05, 896 P.2d 1267 (1995), assumed that federal jurisprudence is the starting point and used *Gunwall* as a tool to determine *whether* the state constitution provides greater protection compelling "access" to a state constitutional analysis. However, later opinions moved away from the treatment of *Gunwall* as a high bar over which parties advocating state constitutional issues must overcome and toward using *Gunwall* as an interpretive tool to assure more thoughtful development of state constitutional jurisprudence.

that the state constitution should be interpreted independently from the federal constitution in this context, the next inquiry is "'what the state's guarantee means and how it applies to the case at hand.'" *Malyon*, 131 Wn.2d at 798 n.30 (quoting The State and Federal Religion Clauses: Differences of Degree and Kind, 5 ST. THOMAS L. REV. 49, 50 (1992)). Consequently, we next examine whether article I, section 3 compels appointed counsel for all children in dependency proceedings.

## II. ARTICLE I, SECTION 3 DOES NOT COMPEL THE APPOINTMENT OF COUNSEL TO ALL CHILDREN IN DEPENDENCY PROCEEDINGS

SK-P argues that children have more liberty interests at stake in dependency proceedings than the involved parents, and therefore, because our Supreme Court has determined that parents are constitutionally entitled to court-appointed counsel, children must also have a constitutional right to court-appointed counsel. Because the liberty interests at stake for children in dependency proceedings are notably different from parents' liberty interests, and because appropriate procedural safeguards otherwise exist to protect children's liberty interests, we disagree.

Procedural due process prohibits the State from depriving an individual of protected liberty interests without appropriate procedural safeguards. *In re Pers. Restraint of Bush*, 164 Wn.2d 697, 704, 193 P.3d 103 (2008). Procedural due process "[a]t its core is a right to be meaningfully heard, but its minimum requirements depend on what is fair in a particular context." *In re Det. of Stout*, 159 Wn.2d 357, 370, 150 P.3d 86 (2007). Washington's constitution extends the right to counsel to cases in which a "fundamental liberty interest . . . is at risk." *Grove*, 127 Wn.2d at 237. "[T]he key issue in determining whether counsel should be present in a proceeding is whether the individual is being deprived of 'liberty.'" *Myricks*, 85

18

Wn.2d at 255 (stating, "[T]he nature of the rights in question and the relative powers of the antagonists, necessitate the appointment of counsel.").

A.     *Children's Liberty Interests in Dependency Proceedings*

Washington has long recognized parents' fundamental liberty interest in the right to parent their children, which compels a constitutional due process right to counsel for parents in dependency and termination proceedings. *See Luscier*, 84 Wn.2d 138; *see also Myricks*, 85 Wn.2d at 253-55; *see also* RCW 13.34.090. Although our Supreme Court has stated that children's liberty interests are equal to those of parents', the court has also noted that children's interests are "very different" from parents' interests. *M.S.R.*, 174 Wn.2d at 17-18. A child's liberty interests at stake in dependency proceedings include

> a child's interest in being free from unreasonable risks of harm and a right to reasonable safety; in maintaining the integrity of the family relationships, including the child's parents, siblings, and other familiar relationships; and in not being returned to (or placed into) an abusive environment over which they have little voice or control.

*M.S.R.*, 174 Wn.2d at 20. The threat to children is notably different from the threat to the parents' liberty interests during dependency proceedings.

A parent in a dependency proceeding often sits in a markedly adversarial position to the State:

> The full panoply of the traditional weapons of the State are trained on the defendant-parent, who often lacks formal education, and with difficulty must present his or her version of disputed facts; match wits with social workers, counselors, psychologists, and physicians and often an adverse attorney; cross-examine witnesses (often expert) under rules of evidence and procedure of which he or she usually knows nothing; deal with documentary evidence he or she may not understand, and all to be done in the strange and awesome setting of the juvenile court.

*Myricks*, 85 Wn.2d at 254. Essentially, a parent's ability to parent is "on trial." In contrast, a child in dependency proceedings is in no way "on trial"; rather, the State has an "urgent interest in the welfare of the child." *Lassiter*, 452 U.S. at 27.

B.      *Procedural Safeguards Protect Children's Liberty Interests*

Another important consideration is that significant procedural safeguards have been built into dependency proceedings to protect a child's liberty interests. Importantly, the State is obligated to advocate for the child's best interests. RCW 74.14A.020. The Department is charged with "[e]nsuring that the safety and best interests of the child are the paramount considerations when making placement and service delivery decisions." RCW 74.14A.020(3).

Additionally, RCW 13.34.100(1) requires a GAL be appointed unless "for good cause" shown the juvenile court concludes it is not necessary. The GAL is required to inform the court of any "views or positions expressed by the child on issues pending before the court" and to "represent and be an advocate for the best interests of the child." RCW 13.34.105(1)(b), (f). But we recognize that a GAL's role is limited. For instance, it is not a GAL's role to summarize or paraphrase pleadings and court orders, explain the legal implications of these documents, or give legal advice, because a GAL does not represent the child as an attorney represents a client. RCW 2.48.180. Additionally, the juvenile court does not assign a GAL until after the initial shelter care hearing. RCW 13.34.065(4)(g).

Our legislature has recognized the potential benefits of legal representation for some children in dependency proceedings and has provided for the same. RCW 34.100(7) allows judges to appoint counsel to children on its own initiative, or upon the request of a parent, the child herself, a guardian ad litem, a caregiver, or the Department. Under RCW 13.34.100(7)(c), children must be notified on their 12th birthday, and at least annually thereafter, of their right to

request an attorney. Additionally, all Washington juvenile courts must appoint counsel for children whose parents' rights were terminated for six months, regardless of their age. RCW 13.34.100(6).

Given the built in procedural safeguards and the reality that children in dependency proceedings are not in an adversarial position to the State, we hold that the Washington Constitution does not provide a categorical right to the appointment of counsel for children in dependency proceedings.

III. THE RIGHT TO COUNSEL UNDER THE FOURTEENTH AMENDMENT

SK-P argues that because dependency proceedings directly implicate children's physical liberty interests, children have a categorical right to court-appointed counsel under the Fourteenth Amendment of the United States Constitution. SK-P argues in the alternative that under *Mathews*,[17] court-appointed counsel is required for all children in dependency proceedings. The Department argues that the Fourteenth Amendment does not compel a blanket rule that counsel be appointed for children in all dependency proceedings and contends that a case-by-case analysis of the *Mathews* factors is sufficient to determine whether federal due process requires the appointment of counsel for a child in a specific case. We agree with the Department.

A.    *Standard of Review*

"[D]ue process 'is not a technical conception with a fixed content unrelated to time, place, and circumstances.'" *Lassiter*, 452 U.S. at 24 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961)). Where an individual's liberty interest

---

[17] 424 U.S. at 335.

assumes sufficiently weighty constitutional significance, and the State by a formal and adversarial proceeding seeks to curtail that interest, the right to counsel may be necessary to ensure fundamental fairness. *In re Application of Gault*, 387 U.S. 1, 41, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967). "[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Lassiter*, 452 U.S. at 26-27. "[A]s a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter*, 452 U.S. at 26. Where an individual's physical liberty is not at stake, courts evaluate three elements in deciding what due process requires: (1) the private interests at stake, (2) the government's interests, and (3) the risk that the procedures used will lead to erroneous decisions. *See Mathews*, 424 U.S. at 335. First, courts balance these elements against each other. Second, courts set the elements' net weight against the presumption against a right to appointed counsel. *Lassiter*, 452 U.S. at 27.

B.      *Child's Physical Liberty Interests*

The United States Supreme Court has described a threat to physical liberty as the State affirmatively acting to curtail "the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). Consistent with such a characterization, the Court has recognized that procedural due process requires appointment of counsel in juvenile delinquency proceedings and in the involuntary transfer of prisoners to mental hospitals. *Gault*, 387 U.S. at 37-38; *see also Vitek v. Jones*, 445 U.S. 480, 491-92, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980). Due process requires that in proceedings to determine delinquency, a juvenile has a right to court-appointed counsel

22

even though proceedings may be styled "civil" and not "criminal" because the determination "may result in commitment to an institution in which the juvenile's freedom is curtailed." *Gault*, 387 U.S. at 41.

Our Supreme Court examined the limits of federal due process in *M.S.R.*, 174 Wn.2d at 16. In that case, our Supreme Court recognized that a child's physical liberty interests may be at stake in dependency and termination proceedings. It explained,

> [T]he child in a dependency or termination proceeding may well face the loss of a physical liberty interest both because the child will be physically removed from the parent's home and because if the parent-child relationship is terminated, it is the child who may become a ward of the State. It is the child, not the parent, who may face the daunting challenge of having his or her person put in the custody of the State as a foster child, powerless and voiceless, to be forced to move from one foster home to another.

*M.S.R.*, 174 Wn.2d at 16. However, our Supreme Court nonetheless determined that any potential physical liberty interest did not rise to the level of requiring court-appointed counsel in every termination case.

Similarly here, even though a dependency may implicate a child's physical liberty interest insofar as the child's residence may change, such a consequence does not rise to the level of being "committed to an institution in which the juvenile's freedom is curtailed." *Gault*, 387 U.S. at 41. A child who is removed from her home during dependency proceedings is not placed in an institution such as a juvenile detention center or a mental health facility; her daily routine may certainly change, but her personal freedom is not curtailed. Consequently, the physical liberty interests at stake for children in dependency proceedings are insufficient to compel the appointment of counsel in every dependency proceeding.

C.      *Mathews Factors*

SK-P argues that even if we hold that a child's liberty interests are not implicated in dependency proceedings, under the three-part *Mathews* test, the Fourteenth Amendment nonetheless compels appointment of counsel in every dependency case.  Traditionally, courts have balanced the *Mathews* factors to determine on a case-by-case basis whether individual children are entitled to court-appointed counsel.  However, SK-P urges us to apply the *Mathews* factors to dependency proceedings *contextually* rather than on a case-by-case basis and hold that the appointment of counsel for children is required in all dependency proceedings.

Here, we address the private interests at stake, the State's interests, and risk of erroneous decision in dependency proceedings generally, and hold that because the *Mathews* factors will weigh differently from case to case, a case-by-case application of the *Mathews* factors is sufficient to protect children's procedural due process rights.

1. *Private Interests*

In *M.S.R.*, our Supreme Court acknowledged the substantial private interests of children in dependency proceedings.  *See* 174 Wn.2d at 15-19.  In a dependency proceeding, the child may be at risk of not only losing a parent but also relationships with siblings, grandparents, aunts, uncles, and other extended family.  *M.S.R.*, 174 Wn.2d at 15.  The legislature has recognized the importance of these relationships.  *See generally* chapter 13.34 RCW.

As discussed above, the child may be physically removed from her parent's home and be put in the custody of the State, "powerless and voiceless, to be forced to move from one foster home to another."  *M.S.R.*, 174 Wn.2d at 16.  Foster home placement may result in multiple changes of homes, schools, and friends over which the child has no control.  Washington courts and the legislature have noted that frequent moves may cause children significant harm.  *M.S.R.*,

174 Wn.2d at 16; *Braam v. State*, 150 Wn.2d 689, 694, 81 P.3d 851 (2003) ("Some children in foster care are moved frequently, which may create or exacerbate existing psychological conditions, notably reactive attachment disorder."); RCW 74.13.310 ("Placement disruptions can be harmful to children by denying them consistent and nurturing support.").

Children in dependency proceedings also have an interest in being free from harm. Despite the State's best and sincere efforts, children are not always free from harm once the State orders their placement. In a dependency, a child may be at risk of being returned to an abusive or neglectful home, or placed in a dangerous foster care setting. Although children have no constitutional right to State intervention to protect them from their own parents, once the State does intervene, rights attach. *M.S.R.*, 174 Wn.2d at 17. Children have a right to basic nurturing, including a safe, stable, and permanent home. RCW 13.34.020.

2. *Government's Interests*

The parties here do not articulate the State's interest. However, in *M.S.R.*, our Supreme Court acknowledged that the State's interest is also very strong. 174 Wn.2d at 18. There, the court described the State's interest as "'an urgent interest in the welfare of the child,'" and accepted the proposition that the State has a compelling interest in both the welfare of the child[18] and in "'an accurate and just decision'" in the dependency proceedings. *M.S.R.*, 174 Wn.2d at 18 (quoting *Lassiter*, 452 U.S. at 27). The *Lassiter* Court also commented on the State's potential pecuniary interest:

> [I]nsofar as the State wishes the . . . decision to be made as economically as possible and thus wants to avoid both the expense of appointed counsel and the cost of the lengthened proceedings his presence may cause. But though the State's pecuniary

---

[18] The State's determination as to "the welfare of the child" may often diverge from the child's liberty interest.

interest is legitimate, it is hardly significant enough to overcome private interests as important as those here.

*Lassiter*, 452 U.S. at 28.

### 3. *Risk of Erroneous Deprivation & Value Added*

The third *Mathews* factor looks to the risk of erroneous deprivation and the value added if all children were appointed counsel in dependency proceedings. *M.S.R.*, 174 Wn.2d at 18.

Current Washington law provides significant protections for children throughout the dependency process.[19] Nonetheless, court-appointed counsel could provide benefits to children throughout the proceedings.

Appointed counsel could help children navigate the complex process of dependency proceedings in order to safeguard their rights throughout the entire process. As our Supreme Court has noted, minors "generally lack the experience, judgment, knowledge and resources to effectively assert their rights." *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 146, 960 P.2d 919 (1998).

---

[19] The Department suggests that parents may sufficiently protect the interests of children in dependency proceedings. We disagree. Parents have their own goals within the proceedings, and although their desired placement outcomes may be aligned with the child's wishes, there are inherent conflicts of interest throughout the proceeding. The very nature of a dependency often pits a parent's interest against the child's. *See Kenny A. ex rel. Winn v. Perdue*, 356 F. Supp. 2d 1353, 1358 (N.D. Ga. 2005). Often, a dependency proceeding is initiated as a result of neglect or abuse of the child by the parent. Parents may oppose placement with anyone but themselves and, therefore, be reluctant to disclose other potentially suitable placements with family members or adults in the child's community. Parents may withhold or mitigate any special needs of their children in an attempt to try and obtain placement. And some parents willingly agree to a dependency placing their children outside of their home. Often the parents' interest in a dependency proceeding will diverge from those of the child, and parents cannot be expected to sufficiently protect their children's interests in dependency proceedings.

Also, appointed counsel may be particularly valuable at the initial shelter care hearing. Amici contend that a finding of shelter care at the initial hearing often determines whether or not a dependency is later established. Indeed, Legal Counsel for Youth and Children (LCYC) found that children with attorneys at the first hearing were more likely than children without counsel to reside with parents, relatives, or other caring adults they know throughout their dependencies. LCYC, *Impact Report* (2015).[20]

A child who has been removed from her home has a right to preferential placement with a relative or known suitable adult. RCW 13.34.130(5). If a social worker is unable to identify relative or suitable adult caregivers, the state typically proposes foster care while it investigates relatives. A parent who is arguing for return home will not be inclined to propose any other potential caregivers. Counsel can gather information from a child, contact adults who can testify as witnesses, and help to identify transportation to school, the courthouse, etc., for the child.

Appointed counsel also may provide confidential communication with the child, help explain the processes to the child, answer the child's questions, ascertain what position, if any, the child would like to take on the issues, and discuss potential consequences. Attorneys may help the child decide how to present information and whether to testify. If the child decides to testify, her attorney can prepare the child and ensure the testimony is elicited in a manner that will safeguard the child's emotional well-being and legal interests.

---

[20] https://static1.squarespace.com/static/533dcf7ce4b0f92a7a64292e/t/56a0b181be7b96af3e180665/1453371782325/Legal+Counsel+for+Youth+and+Children+Impact+Report.++Dated+December+1%2C+2015.pdf (last visited July 24, 2017).

4. *Case-by-Case Application is Sufficient*

Despite the aforementioned potential benefits of court-appointed counsel, the fact remains that not all children will be able to equally benefit from appointed counsel. How the three *Mathews* factors weigh against each other will necessarily vary from case to case. Each child's circumstances will be different and their need for an attorney will vary accordingly.

For example, the child is not removed from the home in every dependency proceeding because the State can file a dependency and allow the child to remain in her home during the pendency of the proceedings. And each child's ability to benefit from appointed counsel is different. Indeed, an infant's need for, and ability to benefit from, appointed counsel is significantly different from a 15-year-old's. Our legislature has recognized the differing needs of children in dependency hearings in its adoption of RCW 13.34.100(6), providing for the appointment of counsel for the children in some, but not all, cases. A case-by-case application of the *Mathews* factors allows a juvenile court to consider each child's individual and unique circumstances to determine whether due process requires the appointment of counsel in dependency proceedings.

CONCLUSION

In conclusion, neither article I, section 3 of the Washington Constitution nor the Fourteenth Amendment to the United States Constitution compel the appointment of counsel for all children in dependency proceedings. Rather, a case-by-case application of the *Mathews* factors sufficiently protects children's due process rights. Ultimately, although we recognize the

No. 48299-1-II

potential benefits of court-appointed counsel, whether appointment for all children would be good policy is a question best left to our legislature. We affirm.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.